CHARLES A. PANNELL, JR., United States District Judge
This action is before the court on the plaintiff's motion for summary judgment [Doc. No. 37]. The plaintiff brought this action pursuant to the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, seeking injunctive and declaratory relief in relation to its request for agency records from the defendants.
I. Background
The plaintiff is seeking records pertaining to the defendants' immigration enforcement operations that occurred in Georgia, North Carolina, and Texas on January 2 and 3, 2016. As a result of these operations, 121 individuals were taken into custody. On January 7, 2016, the plaintiff submitted an FOIA request to the defendants related to the operations. At the time of filing this suit, August 9, 2016, the defendants had produced no records and provided no substantive response to the FOIA request. On September 12, 2016, the defendants filed an answer admitting that no records had been turned over and stating that the request was still in process.
On October 13, 2016, this court issued a scheduling order setting forth a timeline for the defendants to turn over responsive records and provide a Vaughn index ( 32 C.F.R. § 701.39 ) [Doc. No. 11]. The parties jointly requested two amendments to the scheduling order, both of which were granted by the court [Doc. Nos. 14 and 16].
Pursuant to the court's scheduling order, the parties provided a status report on March 22, 2017. The status report indicated that the following issues remain for resolution:
(1) whether the defendants performed an adequate search of their records in response to the plaintiff's FOIA request;
(2) whether the exemptions claimed by the defendants are proper; and
(3) whether the plaintiff is entitled to an award of costs and reasonable attorney fees pursuant to 5 U.S.C. § 552(a)(4)(E).
[Doc. No. 18]. On April 7, 2017, the plaintiff filed an amended complaint in which it *1270 added three paragraphs to Count I: violation of the Freedom of Information Act. These three paragraphs seem to acknowledge that some documents were turned over to the plaintiff by the defendants [Doc. No. 19 at ¶¶ 31-33].
The defendants filed a motion for summary judgment in which they argued that they satisfied all obligations with respect to the plaintiff's FOIA request. The plaintiff opposed the motion for summary judgment and contended that the defendants' searches were inadequate and not reasonably calculated to uncover all relevant documents. Also, the plaintiff argued that the defendants improperly withheld information in light of individual consent forms. This court denied the defendants' motion for summary judgment [Doc. No. 35] and ordered the defendant to turn over documents for which the plaintiff had obtained consent forms.
II. The Plaintiff's Motion
The plaintiff has now moved for summary judgment in which its seeks an order requiring the defendants to produce specific responsive records and conduct additional searches for responsive records [Doc. No. 37].
FOIA cases are generally handled on motions for summary judgment. Miccosukee Tribe of Indians of Florida v. United States , 516 F.3d 1235, 1243 (11th Cir. 2008) ; Miscavige v. I.R.S. , 2 F.3d 366, 369 (11th Cir. 1993). Summary judgment should be granted where there exists "no genuine issue as to any material fact" and the moving party "is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).
A. Specific Documents
This court has already concluded that the absence of judicial or administrative warrants in the responsive documents coupled with the fact that "warrant" was not used as a search term demonstrated that the defendants' searches were inadequate [Doc. No. 35 at 7]. An additional deficiency found by the court in addressing the defendants' motion for summary judgment was the omission of Field Operations Worksheets and I-213 forms from targets arrested in Georgia and Texas.
These two deficiencies were enough for this court to deny the defendants' motion for summary judgment. The issues have been raised again in the plaintiff's motion for summary judgment. The plaintiff is seeking an order from this court requiring the defendants to produce "all judicial warrants, Forms I-200, I-205, and I-213, Field Operations Worksheets, work folders, and arrest folders prepared or resulting from Operation Border Resolve, related to individuals who were subject of the operation." The court agrees that the plaintiff is entitled to receive these documents. And to the extent that non-exempt portions of these documents are available for production, the defendants are ORDERED to produce them within 60 days of the date of this order.
The defendants seem to indicate, however, that these documents are not readily accessible to them because they are not "simply waiting in a file cabinet to be retrieved and produced." [Doc. No. 41 at 13]. Therefore, the defendants will be required to conduct additional searches that, at a minimum, contain the search term "warrant."[1]
*1271 B. Parameters of Additional Searches
The parties agree that for a document search in response to an FOIA request to be adequate, it must be reasonably calculated to uncover all relevant documents. Ray v. U.S. Dep't of Justice , 908 F.2d 1549, 1558 (11th Cir. 1990). The defendants repeatedly cite cases holding that a document search need not be exhaustive and that failure to uncover every document does not indicate an inadequate search. See Lee v. United States Attorney for S. Dist. of Fla. , 289 F. App'x 377, 380 (11th Cir. 2008) ; SafeCard Servs., Inc. v. S.E.C. , 926 F.2d 1197, 1201 (D.C. Cir. 1991). The facts of the instant case are quite different from the cases relied upon by the defendants. In the cited cases, the responding agencies undertook efforts to locate documents that were known to exist and offered explanations of why documents known to exist were no longer in the agencies' possession. Here, the plaintiff has established that officers conducting Operation Border Resolve were trained to (1) carry administrative warrants of removal and administrative warrants of arrest, and (2) document the facts of any consent to enter an area with an expectation of privacy. Yet, the defendants' searches revealed no judicial or administrative warrants. Additionally, it is undisputed that, Operation Border Resolve officers were instructed to assemble arrest folders, complete Field Operations Worksheets and Form I-213 for individuals targeted for deportation; despite the arrest of 121 individuals, the defendants' search turned up Worksheets for only 13 individuals, most of which contained only one page of the form.
While it is true that "the failure of an agency to turn up one specific document in its search does not alone render a search inadequate," Iturralde v. Comptroller of the Currency , 315 F.3d 311, 315 (D.C. Cir. 2003) (citing Nation Magazine v. United States Customs Serv. , 71 F.3d 885, 892 n.7 (D.C. Cir. 1995) ), the absence of whole categories of documents known to exist in relation with Operation Border Resolve is sufficient for this court to conclude that the searches conducted to date have been inadequate.
1. Search Terms
As set forth above, the additional searches must contain the term "warrant." The plaintiff requests the court to order additional search terms including "Operation Border Resolve," "OBR," "immigration raid," "January 2, 2016," "January 3, 2016," "Jan. 2," "Jan.3," "1/2/16," "1/3/16," "JAN 2nd," "JAN 3rd," "FAMU," "Field Operations Worksheet," "FOW," "consent," "fugitive operation," and "fug op." [Doc. No. 37-1 at 2]. In response, the defendants argue that the plaintiff is not entitled to dictate the search terms used by the agency. There are cases supporting this premise, but the courts appear to be speaking in broad terms. See Bigwood v. United States Dep't of Def. , 132 F.Supp.3d 124, 140 (D.D.C. 2015) ("In general, a FOIA petitioner cannot dictate the search terms for his or her FOIA request."); Physicians for Human Rights v. U.S. Dep't of Def. , 675 F.Supp.2d 149, 164 (D.D.C. 2009) ("[T]here is no bright-line rule requiring *1272 agencies to use the search terms proposed in a FOIA request."). In this case, the defendants were afforded the discretion to choose the appropriate search terms at the outset. However, the inadequacy of the searches was pointed out by this court in November 2017 [Doc. No. 35]. Yet, the defendants have done nothing to remedy their searches. Additionally, the defendants offer no argument in response to the plaintiff's motion for summary judgment as to the viability of the terms proposed by the plaintiff. Accordingly, the court will order that the defendants conduct additional searches containing the search term "warrant" as well as those enumerated above.
2. Key Employees
The plaintiff argues that the defendants' search was inadequate because numerous employees who maintained records responsive to the FOIA request were not contacted for responsive records. In response, the defendants correctly cite authority holding that an agency is not required to undertake a search that is so broad as to be unduly burdensome. See Nation Magazine, Washington Bureau. v. United States Customs Service , 71 F.3d 885, 891 (D.C. Cir. 1995). The defendants have established that to contact every law enforcement agent who served on the teams that conducted Operation Border Resolve would result in queries to over 700 law enforcement agents. See Pavlik-Keenan Dec. at ¶¶ 20 - 23. [Doc. No. 41-3]. In the reply brief, the plaintiff concedes that the defendants are in the best position to identify custodians of responsive documents. But, the plaintiff continues to point out that the absence of the documents discussed above from the responsive materials is evidence that the defendants' efforts have not been sufficient.
The court agrees with the plaintiff's reasoning. However, at this point the court will not require the defendant to contact every employee and agent involved in Operation Border Resolve because that approach would likely be overly burdensome. Therefore, in conducting the additional searches required by this order, the defendants are required to search, at a minimum, the email accounts of all of these individuals.
3. Reasonable Coordination and Consistency
The plaintiff next points out a number of inconsistencies in searches conducted by sub-agencies. Specifically, the plaintiff complains that various sub-agencies used differing search terms and terms containing typographical errors. Also, the plaintiff shows that different sub-agencies searched different locations for responsive records, i.e., some searched email accounts only while others searched personal computers, shared drives, and paper files.
In response, the defendants cite authority for the proposition that because different segments of an agency organize and maintain records differently, those who have gained knowledge and experience working in those areas are in the best position to implement searches. See Fox News Network, LLC v. U.S. Dep't of Treasury , 739 F.Supp.2d 515, 534 (S.D.N.Y. 2010). Again, this general premise is true as far as it goes. However, in this case, the defendants have not explained why specific documents such as warrants and Field Operation Worksheets have not been located in the searches they have conducted. Thus, it appears that the knowledge and experience of those working within the defendants' sub-agencies are not getting the job done. Therefore, in conducting the additional searches required by this order, the defendants are required to utilize the *1273 search terms set forth above across all sub-agencies. The court is reluctant to require the search of every agent's personal computer and paper files at this point. However, the search of all email accounts as well as shared drives must be completed.
C. Timing
The plaintiff requests the court to require the defendants to produce non-exempted records located in additional searches on a rolling basis of 1,000 pages per month, starting within 90 days of the date of this order. The defendants argue that this time line is unreasonable, however, the defendants offer no alternative timeline.
The court will not set a timeline for production at this time. However, the court will require that the parties meet and confer within 30 days of the date of this order for the purpose of crafting a joint proposal for conducting the additional searches contemplated by this order and for the production of the non-exempt documents resulting from the searches.
D. Adequacy of Declarations
The plaintiff contends that the defendants' declarations lack critical information necessary to fully assess the remaining aspects of their search. This court has already held that the defendants must provide all search terms used by each component agency that conducted searches and link precisely what files or storage locations were searched using which search terms [Doc. No. 35 at 7]. This information was included in the Declaration of Pavlik-Keenan [Doc. No. 41-3 at ¶¶ 15, 18].
The plaintiff additionally seeks information as to the structure of the file systems that contain potentially responsive documents. The court finds this information unnecessary to assess the adequacy of the defendants' searches. Therefore, with regard to the additional searches to be performed, a declaration providing all search terms used by each component agency that conducted searches and link precisely what files or storage locations were searched using which search terms will suffice.
III. Conclusion
Based on the foregoing,
(1) the plaintiff's motion for summary judgment [Doc. No. 37] is GRANTED IN PART and DENIED IN PART;
(2) the defendants are ORDERED to produce within 60 days from the date of this order "all judicial warrants, Forms I-200, I-205, and I-213, Field Operations Worksheets, work folders, and arrest folders prepared or resulting from Operation Border Resolve, related to individuals who were subject of the operation" to the extent that these documents are accessible.
(3) the defendants are ORDERED to conduct additional searches in compliance with Part II.B.
(4) the parties are ORDERED to meet and confer within 30 days in order submit a joint proposed schedule for searches required and production of non-exempt records resulting from the searches. If the parties are unable to agree on a schedule, they shall file individual proposals. The proposal(s) shall be filed no later than September 6, 2018.
(5) the parties are ORDERED to submit a joint status report within 15 days following the defendants' final production addressing any issues the parties believe to remain in this litigation.
SO ORDERED this 26th day of July, 2018.

The defendants have produced the declaration of Catrina Pavlik-Keenan, the FOIA Officer at U.S. Immigration and Customs Enforcement [Doc. No. 41-3]. Pavlik-Keenan attempts to address the reason for not using the term "warrant" and other variations at Paragraph 25. But her explanation does not make sense. She may be trying to indicate that the word "warrant" and its variations would result in an overly broad result. However, she says that use of the term "warrant" and related terms "are unlikely to result in locating any particularly responsive record in response to a request." Pavlik-Keenan does not apply her reasoning to this request and she does not explain why a search using "warrant" cannot be conducted with additional search terms such as the dates in question or the name of the operation.